UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JOHAN K. NILSEN**,                                  Chapter 7
    Debtor,                                   Case No. 15-11034-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOHAN K. NILSEN**,
    Plaintiff
v.                                                    Adv. P. No. 15-1122

**MASSACHUSETTS DEPARTMENT
OF REVENUE and INTERNAL REVENUE
SERVICE**,
    Defendants
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

    The matters before the Court are the Motion of the Massachusetts Department of Revenue for Judgment on the Pleadings and the Motion of the United States of America[1] for Judgment on the Pleadings and, in the Alternative, Summary Judgment

---

[1] Although named as a defendant in this Adversary Proceeding, the Internal Revenue Service is a bureau of the United States Department of the Treasury, *see* 26 C.F.R. § 601.101, and does not have the capacity to sue or be sued in its own name. *See* Castleberry v. ATF, 530 F.2d 672, 673 n.3 (5th Cir. 1976)(Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued *eo nomine*.). *See also* Cianflone v. Internal Revenue Service, No. Civ. A. PJM 04-1905, 2005 WL 914842, at *2 (D. Md. March 7, 2005)("It is 'well settled that the Internal Revenue Service, an agency of the United

1

(together, the "Motions") with respect to the three count Complaint, captioned "Complaint to Determine Dischargeability of Debts," filed by the Debtor, Johan K. Nilsen (the "Debtor"). Through his Complaint, the Debtor seeks a determination that taxes, penalties and interest owed by him for tax years 2000-2005, 2007, 2009 and 2010 to the Defendants are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A), (B) or (C). Consistent with the relief sought in his Complaint, the Debtor opposes the Motions filed by the state and federal taxing authorities. The Court heard the Motions on October 30, 2015; treated both as motions for summary judgment due to the need to consider matters outside the pleadings pursuant to Fed. R. Civ. P. 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b); directed the Debtor to file a supplemental affidavit; and took the matters under advisement.

The issue presented is whether the Debtor's late filed IRS Form 1040s and Massachusetts Form 1s for the above tax years constitute "equivalent reports," such that the taxes are not excepted from discharge under 11 U.S.C. § 523(a)(1)(B). The material facts necessary to decide these matters are not in dispute, and the matter is ripe for summary judgment. The Court now makes its findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

States, cannot sue or be sued.'")(quoting United States ex rel. I.R.S. v. Filipovits, 78 A.F.T.R.2d (RIA) 6446 (D. Md. 1996)). The United States filed all pleadings on behalf of the Internal Revenue Service but has not sought dismissal of this Adversary Proceeding for lack of personal jurisdiction. It would appear that the United States has no objection to the Court's consideration of its Motion filed on behalf of the IRS.

**II. FACTS AND PROCEDURAL BACKGROUND**

The Debtor owes the Massachusetts Department of Revenue (the "MDOR") and the Internal Revenue Service (the "IRS") amounts for unpaid income taxes, penalties and interest for the years 2000-2005, 2007, 2009 and 2010 (the "Periods at Issue"). For each of the Periods at Issue, the Debtor was required to file tax returns with the MDOR and the IRS on or before April 15th of the year following each of the years in the Periods at Issue, or by the deadline pursuant to any allowed extensions. No extensions of the time to file the returns were applied for or approved. The Debtor failed to timely file such returns but instead filed on August 23, 2010 a "Form 1040" ("Form 1040") with the IRS and a "Form 1" ("Form 1") with the MDOR for each of the Periods at Issue, except for the year 2010. For the year 2010, the Debtor filed the same forms with the taxing authorities on or before March 12, 2012.[2]

More than two years after these submissions, on March 20, 2015, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, and the U.S. trustee appointed a Chapter 7 Trustee. On Schedule F – Creditors Holding Unsecured Nonpriority Claims, the Debtor listed the IRS as the holder of a claim in the amount of $217,529 for "income taxes 2000-2010" and the MDOR as the holder of a claim in the amount of $28,434 for income taxes for the same time period. On April 23, 2015, the Chapter 7 Trustee filed a Report of No Distribution, and, on June 29, 2015, the Debtor received a discharge of all dischargeable debts pursuant to 11 U.S.C. § 727.

---

[2] These dates are provided in the Debtor's Affidavit filed on November 9, 2015 and

3

On June 29, 2015, the Debtor filed the Complaint seeking a determination of the dischargeability of the Debtor's income tax for the Periods at Issue pursuant to 11 U.S.C. § 523(a)(1). The Debtor formulated three counts as follows: Count I (11 U.S.C. § 523(a)(1)(A)); Count II (11 U.S.C. § 523(a)(1)(B)); and Count III (11 U.S.C. § 523(a)(1)(C)). The MDOR filed an Answer on July 3, 2015 and filed its Motion for Judgment on the Pleadings on August 3, 2015, which the Debtor opposed on September 3, 2015. The United States filed an Answer on September 1, 2015 and filed its Motion for Judgment on the Pleadings and, in the Alternative, Summary Judgment on September 15, 2015. It supported its Motion with a statement of material facts pursuant to LR., D. Mass. 56.1, as adopted by Massachusetts Local Bankruptcy Rule 7056-1, and the Declaration of Catherine Staskin, an IRS Insolvency Specialist. The Debtor filed his Objection to that Motion on October 15, 2015.

As stated above, the Court heard both Motions on October 30, 2015 and, in the absence of any objections by the parties, treated them as motions for summary judgment due to the Court's direction that the Debtor file copies of the submissions he made to the MDOR and the IRS for the Periods at Issue. Following the hearing, the Debtor filed an Affidavit to which he attached copies of the Form 1s and Form 1040s he submitted to the taxing authorities for the Periods at Issue. Notably, the Form 1040 is entitled "U.S. Individual Income Tax Return," and the Form 1 is entitled "Massachusetts Resident Income Tax Return." On November 11, 2015, the MDOR

---

differ from the dates set forth in the Complaint.

filed a response to the Debtor's Objection to its Motion.

## III. DISCUSSION

A. <u>Summary Judgment Standard</u>

The summary judgment standard requires little explication in the context of this adversary proceeding, particularly where the material facts are not in dispute. In <u>Weiss v. Wells Fargo Bank, N.A. (In re Kelley)</u>, 498 B.R. 392 (B.A.P. 1st Cir. 2013), the United States Bankruptcy Appellate Panel of the First Circuit stated:

> "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 762 (1st Cir. 1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." <u>Id</u>.; *see also* Fed. R. Bankr.P. 7056; Fed. R. Civ. P. 56. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." <u>In re Varrasso</u>, 37 F.3d at 763 (citing Fed.R.Civ.P. 56(c)). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

<u>In re Kelley</u>, 498 B.R. at 397 (emphasis in original)(footnote omitted).

B. <u>Applicable Law</u>

Section 523(a)(1) sets forth three categories of debts for taxes which are excepted from discharge. If the debt for such taxes meets the standard under § 523(a)(1)(A), (B) or (C), then the debt is nondischargeable. The Debtor bases Count I of the Complaint on § 523(a)(1)(A) which relates to certain priority taxes, and Count III on § 523(a)(1)(C),

which relates to taxes with respect to which the Debtor made a fraudulent return or otherwise willfully attempted to evade or defeat the tax. In the Motions and the Objections, the parties focused exclusively on Count II of the Complaint based on § 523(a)(1)(B), which excepts from discharge taxes owed with respect to a required "return, equivalent report or notice" which was either not filed or given at all or was filed or given late but within two years prior to the commencement of the bankruptcy case. The Court will address only Count II of the Complaint.

Section 523(a)(1)(B) provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—...

> (B) with respect to which a return, or equivalent report or notice, if required—
>
>> (i) was not filed or given; or
>> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(1)(B). Subsection (i) of § 523(a)(1)(B) excepts from discharge tax liabilities for which the debtor never filed or gave a return, while subsection (ii) sets forth the so-called "two year rule," which excludes from discharge taxes for which a return was filed after its due date but only if the return was filed within two years of the bankruptcy filing. See McBride v. City of Kettering, Ohio (In re McBride), 534 B.R. 326, 331 (Bankr. S.D. Ohio 2015).

Prior to 2005, the term "return" was not defined by the Bankruptcy Code, and courts often adopted a four-part test which was first articulated by the United States Tax Court in Beard v. Comm'r, 82 T.C. 766, 777–78 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986), in order to determine whether a document purporting to be a return was a return for purposes of section 523(a). The so-called Beard test, which was formulated by the United States Tax Court combining the principles set forth in two United States Supreme Court cases, Germantown Trust Co. v. Comm'r, 309 U.S. 304, 60 S.Ct. 566, (1940), and Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127 (1934), provides that in order for a document to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033 (6th Cir. 1999). *See generally* Fahey v. Mass. Dep't of Revenue (In re Fahey), 779 F.3d 1, 10 (1st Cir. 2015).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended 11 U.S.C. § 523(a) by adding an unnumbered "hanging paragraph" that defines the term "return" for purposes of that subsection. It provides:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).

In 2015, the United States Court of Appeals for the First Circuit in Fahey v. Massachusetts Dep't of Revenue (In re Fahey), 779 F.3d 1 (1st Cir. 2015), ruled that a Massachusetts state income tax return filed after the date by which Massachusetts requires such returns to be filed does not constitute a "return" under 11 U.S.C. § 523(a), and, therefore, unpaid taxes due pursuant to that return could not be discharged. Id. The decision in Fahey involved consolidated appeals in four separate Chapter 7 cases where the debtors all failed to timely file their Massachusetts income tax returns for multiple years in a row and failed to pay, either timely or otherwise, their taxes to the MDOR. Eventually, each debtor filed his tax returns late. More than two years later, they each filed for bankruptcy relief and sought determinations that their tax obligations were dischargeable.

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw), 895 F.2d 1170, 1172 (7th Cir. 1990); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995). *See also* Rossman v. United States of America (In re Rossman), 487 B.R. 18, 35 (Bankr. D. Mass. 2012). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is by the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). The burden of proving that the Debtor's tax liabilities are non-dischargeable is on the MDOR and the United States. Sommers v. Internal Revenue Service (In re

Sommers), 209 B.R. 471, 477–78 (Bankr. N.D. Ill. 1997) (citations omitted).

 C. Positions of the Parties

 The Debtor does not contend that tax forms he submitted to the IRS and the MDOR constitute "returns" as defined in § 523(a)(*); rather, he contends that they constitute "equivalent reports" as that term is used in § 523(a)(1)(B). He further contends that because the tax forms were filed more than two years prior to the petition date, the amounts owed for the Periods at Issue are not excepted from discharge. In characterizing the tax forms as "equivalent reports" instead of "returns," the Debtor hopes to evade application of the holding of the United States Court of Appeals for the First Circuit in Fahey v. Massachusetts Dep't of Revenue (In re Fahey), 779 F. 3d 1 (1st Cir. 2015), discussed above. Specifically, the Debtor relies upon a footnote in which the Court of Appeals stated:

> At oral argument, the attorney for Gonzalez and Brown [the Debtor's attorney in the instant case] raised the point that even if a late filed return is not a return, it may qualify as an "equivalent report or notice" under section 523(a)(1)(B). Since this argument was not preserved in the record by any of the four debtors or briefed on appeal to this Court, we do not consider it here. *See* United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).

In re Fahey, 779 F.3d at 4 n.3. The Debtor, again citing a footnote, observes that the Court of Appeals noted the "possibility" that pre-BAPCPA case law, such as that set forth in Beard v. Comm'r, 82 T.C. 766, 777-78 (1984), *aff'd* 793 F.2d 139 (6th Cir. 1986), "might remain viable in deciding whether a document not purporting to be a return is an 'equivalent report or notice' under section 523(a)(1)(B)." In re Fahey 779 F.3d at 10

9

n.12 (citing State of Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 280-81 (4th Cir. 2011)).

The Debtor argues that he satisfies the four-part test as explained in In re Hindenlang, 164 F.3d at 1033, stating the following:

> Clearly, the Plaintiff's Returns are the equivalent of a return because they were on the form prescribed by the IRS, enabled the IRS to make an assessment of the tax, penalties and interest due and were treated as returns required to be filed pursuant to section 6011(a) of the IRC. Moreover, the IRS agrees that the Returns are returns for non-bankruptcy purposes. A document which is not a return within the meaning of section 523(a)(*) solely due to its tardiness, constitutes an equivalent report where it satisfies the non-bankruptcy definition of return in all other respects, is treated as a return for non-bankruptcy purposes and serves the same function as a timely filed return.

(footnote omitted). The Debtor also contends that his construction of section 523(a)(1)(B) will not render section 523(a)(*) meaningless. He notes that the term "equivalent report" is used only in subsection (B) and that, if Congress intended to limit the meaning of the term "equivalent report" to include only a document that strictly adhered to the definition used in section 523(a)(*), there would be no reason to add the term "equivalent report" to section 523(a)(1)(B), because such a use would be entirely redundant. The Debtor then argues that, for the term "equivalent report" to have any meaning in subsection (B), it must necessarily apply to something other than a section 523(a)(*) return. The Debtor adds that the fact that section 523(a)(1)(C) also uses the term "return" suggests that, while limiting the meaning of "return" to the section 523(a)(*) definition for both subsections (B) and (C), Congress expanded the scope of documents that debtors could "file or give" in order to discharge a tax debt more than

two years before the commencement of the case under section 523(a)(1)(B) to include equivalent reports or notices, whereas section 523(a)(1)(C) only refers to fraudulent returns.

The United States and the MDOR both rely upon the decision of the United States Court of Appeals for the First Circuit in In re Fahey. The United States highlights the language of section 523(a)(1)(B)(i) which provides, in part, that a debt for taxes is excepted from discharge "with respect to which a return, or equivalent report or notice, if *required* . . . was not filed or given . . . " (emphasis added). Recognizing that the Court of Appeals stated that pre-BAPCPA case law might remain viable in determining whether a document which does not purport to be a return may be an equivalent report or notice, the United States argues that, although that could be an important distinction in the context of the dischargeablity of state taxes, the distinction between "returns" and "equivalent reports" is immaterial for federal tax obligations. According to the United States, the reason is straightforward: federal tax law only requires the filing of "returns." In contrast to certain state tax codes, the United States, citing 26 U.S.C. § 6012(a)(1)(A), emphasizes that "[t]he Internal Revenue Code requires, with exceptions not applicable in this case, that '[r]eturns with respect to income taxes under subtitle A shall be made by . . . [e]very individual having for the taxable year gross income which equals or exceeds the exemption amount . . . .'" It adds, citing 26 U.S.C. § 6011(a), that "[t]he Internal Revenue Code does not require any other report or notice for individuals to report their income taxes" because "the Internal Revenue Code

requires the filing of a return 'according to the forms and regulations prescribed by the Secretary'" and that "[t]he form of the required return prescribed by the Secretary is the Form 1040."

In addition, the United States argues that the plain language of section 523(a)(1)(B) and (a)(*) indicate that a late filed Form 1040 is not an equivalent report or notice. While recognizing that for non-bankruptcy purposes a late filed Form 1040 constitutes a return, *see* 26 U.S.C. §§ 6501(a), 6531(5) and 7206(a), the United States maintains that a document that is not a return for non-bankruptcy purposes cannot be a return for purposes of section 523(a). Accordingly, it concludes that whether a document constitutes an equivalent report or notice for purposes of section 523(a) such a document must be equivalent to a return as defined by section 523(a). Citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S. Ct. 1026 (1989), and *Webster's Third New International Dictionary* 769 (3d ed. 2002) (defining equivalent), the United States argues:

> Applying the ordinary meaning of the statutory language to the Forms 1040 that the Plaintiff filed for the Periods at Issue, it is clear that these Forms 1040 were neither alike in import nor corresponding in effect or function to timely filed returns, which would have provided the IRS the information necessary to determine and attempt to collect the Plaintiff's tax liabilities at the time that the taxes were due.

The United States also contends that construing section 523(a)(1)(B) to allow a late-filed Form 1040 to constitute an equivalent report or notice would render superfluous the hanging paragraph's requirement that "the term 'return' means a

12

return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a)(*). Citing In re Ciotti, 638 F.3d at 280 ("Congress amended the statute to refer to the failure to file or give 'a return, *or equivalent report or notice*, if required.' In so doing, Congress clearly expanded the class of requirements that, when they are not met, preclude dischargeability.")(emphasis in original), it concludes that "[i]f a Form 1040 that did not satisfy the applicable filing requirements constituted an equivalent report or notice, then there would be no purpose in Section 523(a) requiring that the document purporting to be a return satisfy the applicable filing requirements to be dischargable.

The MDOR adds that Ciotti made clear that "by adding the language 'or equivalent report or notice' to § 523(a)(1)(B), Congress 'clearly expanded' (and not diminished) the prerequisites for dischargeability of taxes in bankruptcy." It also relies on Green v. United States of America (In re Green), 472 B.R. 347, 365 (Bankr. W.D. Tex. 2012)("If one could just discharge taxes by filing some type of notice or report that is not a tax return, then § 523(a)(*) and its definition of "return" would become meaningless.").

D. Analysis

In view of the decision of the Court of Appeals for the First Circuit in Fahey, and the absence of any authority cited by the Debtor, the Court rejects the position espoused by the Debtor, namely that a late filed tax return is an equivalent of a return, as defined under section 523(a)(*). The Court is not persuaded by the Debtor's legerdemain. The

13

Debtor filed Form 1040s and Form 1s late. He did not file something akin to or equivalent to those documents. He filed actual returns, not something different. It appears to this Court that the Debtor is attempting to rename the tax forms as equivalent reports to evade the holding of In re Fahey.

The decision in Ciotti is instructive. In that case, the debtor filed Maryland state income tax returns in 1996 for the 1992, 1993, 1994, 1995, and 1996 tax years. In April of 2007, she filed a Chapter 7 bankruptcy petition and received a discharge. In 1998, the IRS issued a Letter of Determination making adjustments to each of Ciotti's returns, significantly increasing her federal adjusted income for each of the 1992–1996 tax years. Ciotti, 638 F.3d at 278. Because Maryland taxable income is based upon federal adjusted income, the debtor was required under Maryland law to report the amount of the changes to her federal adjusted income to Maryland tax authorities (and explain any errors that she believed the IRS made). Id. (citing Md. Code Ann., Tax–Gen. § 13–409(b)). Although Ciotti, did not report the changes to the Maryland authorities, the IRS transmitted its determination to the Maryland Comptroller who then adjusted Ciotti's state returns, resulting in an assessment of more than $500,000 in taxes, penalties, and interest. Id.

In February 2009, Ciotti moved to reopen her bankruptcy case and filed a complaint through which she sought a determination that her Maryland income tax liabilities for 1992 through 1996 had been discharged. Id. The Maryland Comptroller, however, contended that the tax liabilities were excepted from discharge under 11

U.S.C. § 523(a)(1)(B). The bankruptcy court granted judgment on the pleadings in favor of the debtor, concluding that the report that § 13–409 required Ciotti to file did not constitute an "equivalent report or notice" within the meaning of § 523(a)(1)(B). On appeal, the district court reversed the bankruptcy court judgment. Id. The United States Court of Appeals for the Fourth Circuit affirmed.

Noting that the exception to discharge set forth in section 523(a)(1)(B), "embodied the bankruptcy policy that '[i]n general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrong-doing or serious fault.' S.Rep. No. 95–989, at 14, reprinted in 1978 U.S.C.C.A.N. 5787, 5800," the Fourth Circuit stated:

> After Congress enacted § 523(a)(1)(B), several courts considered whether a failure to file reports similar to the one § 13–409 requires constituted the failure to file "a return," such that the corresponding tax liability would be excepted from discharge, and almost all of them determined that § 523(a)(1)(B) did not except the tax liability from discharge.

In re Ciotti, 638 F.3d at 279 (citations omitted). Noting that BAPCPA amendment to section 523(a)(1)(B), the court observed that "Congress made it applicable not only to the failure to file a required return, but also to the failure to file or give an 'equivalent' required 'report or notice.'" Id. The Fourth Circuit noted that "[i]t is apparent from the changes that Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor failed to file a return also justify precluding the discharge of the tax debt when the debtor failed to file or give a required report or notice corresponding to that debt." Id. at 279-80 (citing *Collier on Bankruptcy*

¶ 523.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010)).  The court of appeals distinguished between tax returns and the type of report or notice that the debtor was required to file as a result of the IRS assessment, stating:

> Congress amended the statute to refer to the failure to file or give "a return, *or equivalent report or notice*, if required." In so doing, Congress clearly expanded the class of requirements that, when they are not met, preclude dischargeability. Ciotti fails to satisfactorily explain what sort of reports or notices Congress targeted with its amendment if it was not the very sort that are the subject of this case.

638 F.3d at 280(emphasis in original).  The Court finds the reasoning of the MDOR and the United States, as well as the decisions in Fahey and Ciotti compelling.

Even were the Court to consider the Debtor's argument that it should apply Beard's four part test to determine whether his returns constituted "equivalent reports," the result would be the same.  As the court of appeals observed in Fahey:

> Prior to the BAPCPA, and in the absence of any limiting definition of the term "return," courts used a four-part test first articulated by the United States Tax Court in Beard v. Comm'r, 82 T.C. 766, 777–78 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986), in order to determine whether a document purporting to be a return was a return for purposes of section 523(a). Courts considered a return's timeliness under the Beard test's fourth prong: whether the submitted document "represent[ed] an honest and reasonable *attempt* to satisfy the requirements of tax law." United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033–34 (6th Cir. 1999) (emphasis supplied); *see also* Colsen v. United States (In re Colsen), 446 F.3d 836, 839 (8th Cir. 2006); In re Payne, 431 F.3d at 1057; In re Moroney, 352 F.3d at 905; United States v. Hatton (In re Hatton), 220 F.3d 1057, 1060–61 (9th Cir. 2000). These cases dealt only with federal tax returns, and even within that limited context, failed to reach a consensus on the issue. The Fourth, Sixth, Seventh, and Ninth Circuits all determined that debtors who submitted their tax returns late for multiple consecutive years and then filed for bankruptcy had not satisfied the test's fourth prong, but the bases for that conclusion varied. *See* In re Payne, 431 F.3d at 1057–59 (expressing concern that a chronically delinquent taxpayer was

16

making belated filings to "set the stage" for a discharge in bankruptcy); In re Moroney, 352 F.3d at 905–06 (same); In re Hatton, 220 F.3d at 1061 (debtor "made every attempt to avoid paying his taxes until the IRS left him with no other choice"); In re Hindenlang, 164 F.3d at 1034 (post-assessment returns lack utility for the I.R.S.). *But see* In re Colsen, 446 F.3d at 839–41 (document's contents, not timeliness, determined what constitutes a "return" for discharge purposes).

In re Fahey, 799 F.3d at 10. In view of the undisputed facts that for each of the tax periods ending December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003, December 31, 2004, December 31, 2005, December 31, 2007, December 31, 2009, the Debtor filed an IRS Form 1040 with the IRS on the same date, August 23, 2010; that for the tax period ending December 31, 2010, the Debtor filed an IRS Form 1040 with the IRS on March 12, 2012; and that the Debtor also did not timely file his state tax returns, the Court concludes, for the sake of argument only, that the Debtor failed to satisfy the Beard test.

## IV. CONCLUSION

For the reasons set forth above, the Court shall enter an order granting summary judgment in favor of the United States and the MDOR on Count II of the Debtor's Complaint. The remaining Counts I and III in the Complaint are moot.

By the Court,

*Joan N. Feeney*

Dated: December 14, 2015          Joan N. Feeney
                                  United States Bankruptcy Judge